UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| LONNY J. HARROWA, | ) | CIV. 11-5055-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| CHRIS CAM CORPORATION, | ) | |
| d/b/a HEARTLAND PAPER | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

Plaintiff's complaint was filed on July 1, 2011. (Docket 1). On July 12, 2011, the summons and complaint were served on Dempster Christenson, registered agent for defendant Chris Cam Corporation ("Chris Cam"). (Docket 6-1). On August 25, 2011, plaintiff filed a motion for default judgment pursuant to Fed. R. Civ. P. 55(b)(2). (Docket 7). Because Rule 55(a) was the proper citation for entry of a default judgment against a party who has failed to plead or defend, the Clerk of Court entered a default judgment on August 29, 2011. (Docket 11). On September 2, 2011, Chris Cam filed motions to set aside the entry of default, to deny plaintiff's motion for default judgment, and for leave to file an answer out of time. (Dockets 12 & 15). Defendant's motions are based on excusable neglect, the existence of meritorious defenses, and the lack of substantial prejudice to

plaintiff if the default is excused.  (Dockets 12 & 15).  After briefing, the issue is ripe for resolution.

## FACTUAL BACKGROUND

Defendant acknowledges its registered agent and CEO, Dempster Christenson, was served with the summons and complaint on July 12, 2011.  (Docket 14, p. 1).  Pursuant to Fed. R. Civ. P. 12 (a)(1)(A)(i), "[a] defendant must serve an answer . . . within 21 days after being served with the summons and complaint . . . ."  Twenty-one days after July 12, 2011, excluding the date of service pursuant to Rule 6(a)(1)(A), is August 2, 2011.[1]  Defendant acknowledges its answer was required to be served on or before August 2, 2011.  (Docket 14, p. 1).

After receiving the summons and complaint, Sandra Christenson, President of Chris Cam, reviewed the allegations of the complaint.[2]  (Docket 13, ¶ 5).  Because Chris Cam filed a *pro se* response to plaintiff's administrative charge before the South Dakota Division of Human Rights, Ms. Christenson concluded she could likewise file a *pro se* response to

---

[1]Plaintiff argues defendant's answer was due on August 1, 2011.  (Docket 20, p. 1).  Plaintiff's calculation is mistakenly based on a twenty-day period.  Id.  The summons prepared by plaintiff's counsel and issued by the Clerk of Court properly reflected the twenty-one day response period required by Fed. R. Civ. P. 12(a)(1)(A)(i).  (Docket 6).

[2]Chris Cam's annual statement filed with the South Dakota Secretary of State on February 7, 2011, shows Mr. Christenson as President and Ms. Christenson as Vice President.  See South Dakota Secretary of State website - last visited November 2, 2011.

plaintiff's complaint. Id. at ¶ 7. Prior to responding to plaintiff's complaint, Ms. Christenson "contacted the South Dakota Department of Labor to verify that she was properly calculating the 20-day response date for filing her Answer to the Complaint." Id. at ¶ 8. Upon the apparent recommendation of the Department of Labor, Ms. Christenson attempted to contact plaintiff's attorney, Shiloh MacNally, by telephone. Id. at ¶ 10. Ms. Christenson did not talk with Attorney MacNally, but rather spoke with Becky Purington, a paralegal in the Gunderson, Palmer, Nelson & Ashmore, LLP, law firm. (Docket 21-1, ¶¶ 1 & 2). Ms. Christenson suggested to Ms. Purington that Attorney MacNally was "helping her with" the plaintiff's file. Id. at ¶ 3. After concluding Ms. Christenson was calling on behalf of Chris Cam, Ms. Purington informed Ms. Christenson that she "should read and follow the directions on the Summons." Id. at ¶ 10. Ms. Purington reminded Ms. Christenson that no legal advice was being given, but that Ms. Purington would leave a message for Attorney MacNally. Id.

By letter dated August 2, 2011, Ms. Christenson faxed Attorney MacNally Chris Cam's "Responses to Allegations." (Docket 7-2). This response made specific reference to particular paragraphs of the complaint (Docket 1) and included detailed denials of the complaint's allegations of disability and discriminatory employment practices. Id. That same day, Attorney MacNally sent a return letter to Ms. Christenson via e-mail. (Docket 7-3). In her letter, Attorney MacNally stated "I received your letter

3

today by email.  I cannot render legal advice to you.  You need to seek legal counsel on this matter." Id.  Despite Attorney MacNally's clear declarations, Ms. Christensen did not seek the advice of an attorney.  (Docket 14, p. 2).

On August 25, 2011, Attorney MacNally filed plaintiff's motion for default judgment and request for hearing.³  (Docket 7).  Attached to the motion were Ms. Christenson's response and Attorney MacNally's letter, both dated August 2, 2011.  (Dockets 7-2 and 7-3).  As part of the filing, Attorney MacNally properly included a certificate of service indicating copies of plaintiff's filings were mailed to Mr. Christenson.  (Docket 10).  Mr. Christenson is the registered agent and CEO of Chris Cam.  (Docket 14, p. 1).

After reviewing the documents of record, including Ms. Christenson's response and Attorney MacNally's letter (Dockets 7-2 & 7-3), the Clerk of Court concluded the "[d]efendant failed to answer or otherwise defend and that the plaintiff is entitled to entry of default." (Docket 11).  Pursuant to

---

³Defendant argues Attorney MacNally engaged in a deceptive course of conduct.  "On August 25, 2011, without any additional communication to Ms. Christenson or the Company, Counsel for Plaintiff filed a 'Motion for Default Judgment."  (Docket 14, p. 2).  The court disagrees with that argument.  Attorney MacNally's filing complied with Fed. R. Civ. P. 5.  "Unless these rules provide otherwise, each of the following papers must be served on every party . . . a written motion, . . . ."  Fed. R. Civ. P. 5(a)(1)(D).  Because no formal appearance was made by Chris Cam in the case docket, Attorney MacNally may not have been required to provide this notice to defendant.  "No service is required on a party who is in default for failing to appear."  Rule 5(a)(2).

4

the authority of Rule 55(a), the Clerk filed an entry of default in favor of plaintiff and against Chris Cam on August 29, 2011. Id. That same day, the Clerk mailed a copy of the entry of default to Ms. Christenson on behalf of the defendant.

Upon receipt of plaintiff's motion for default on September 1, 2011, Ms. Christenson contacted Attorney A. Stevenson Bogue. (Docket 13, ¶ 4). That same day, Attorney Bogue called Attorney MacNally. Id. at ¶ 17. Because Attorney MacNally was unavailable, he left a voice mail. Id. In his voice mail, Attorney Bogue advised he is an attorney, would be representing Chris Cam, and asked Attorney MacNally to call him back to discuss plaintiff's motion. Id. Before Attorney MacNally could return the call, Attorney Bogue filed defendant's motions. (Docket 21, ¶ 11).

In resistance to defendant's motions, plaintiff submitted evidence of Chris Cam's litigation history in the District of South Dakota . (Docket 21-3). See Baltzer v. Chris Cam Corp., d/b/a Heartland Paper Company, CIV. 07-4194 (D.S.D. 2007). Balzer involved race discrimination and retaliation claims. (CIV. 07-4194; Docket 10). Chris Cam was represented by Attorney Bogue. (CIV. 07-4194; Docket 6). Ms. Christenson was a witness on behalf of the defendant. (CIV. 07-4194; Docket 29).

Chris Cam was also a defendant in an age discrimination case filed in the Southern Division of the District of South Dakota. See Kuzma v. Chris Cam Corporation, d/b/a Triangle School Supplies, CIV. 85-4156 (D.S.D.

1985). Attorney Bogue represented Chris Cam in that action. (CIV. 85-4195; Docket 1).

Plaintiff presented a summary of Chris Cam's participation in state court proceedings in South Dakota. (Docket 21-4). Chris Cam was involved in approximately twenty-seven civil cases in the state system and participated in about eleven default judgment proceedings. (Dockets 21, ¶ 14 & 21-4). Chris Cam appeared as both plaintiff and defendant in state court cases. (Docket 21-4).

## DISCUSSION

The summons properly set forth the obligations of Chris Cam following service of the summons and complaint. (Docket 6). "Within 21 days after service of this summons on you (not counting the day you received it) . . . you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure . . . . You also must file your answer or motion with the court." Id. Compliance with the summons is a two-part obligation: first, serve an answer to the complaint or motion under Rule 12 on plaintiff's attorney; and second, file the answer or motion with the court. Id.

"When a party 'has failed to plead or otherwise defend' against a pleading listed in Rule 7(a) [a complaint], entry of default under Rule 55(a) must precede grant of a default judgment under Rule 55(b)." Johnson v. Dayton Electric Manufacturing Company, 140 F.3d 781, 783 (8th Cir.

1998).  In the event a defendant fails to timely file an answer or other responsive pleading, "the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  "The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)."  Fed. R. Civ. P. 55(c).  Rule 60 allows the court to set aside a "final judgment, order, or proceeding" for a limited number of reasons.  Fed. R. Civ. P. 60(b).  Those reasons, relevant to this particular case, are:

> (1)  mistake, inadvertence, surprise, or excusable neglect; [and]
> . . .
> (6)  any other reason that justifies relief.

Id.  The court is obligated to assess "just terms" against the moving party in granting such relief.  Id.

"Rule 55(c) provides that the district court may set aside an entry of default '[f]or good cause shown,' and may set aside a default judgment 'in accordance with Rule 60(b).'  Although the same factors are typically relevant in deciding whether to set aside entries of default and default judgments, '[m]ost decisions . . . hold that relief from a default judgment requires a stronger showing of excuse than relief from a mere default order.'"  Johnson, 140 F.3d at 783 (citing Connecticut National Mortgage Co. v. Brandstatter, 897 F.2d 883, 885 (7th Cir. 1990)).  "This is a sound distinction.  There is a 'judicial preference for adjudication on the merits,' and it is likely that a party who promptly attacks an entry of default, rather

than waiting for grant of a default judgment, was guilty of an oversight and wishes to defend the case on the merits." Id. (citing Oberstar v. F.D.I.C., 987 F.2d 494, 504 (8th Cir. 1993)).

"When examining whether good cause exists, the district court should weigh 'whether the conduct of the defaulting party was blameworthy or culpable, whether the defaulting party has a meritorious defense, and whether the other party would be prejudiced if the default were excused.' " Stephenson v. El-Batrawi, 524 F.3d 907, 912 (8th Cir. 2008) (citing Johnson, 140 F.3d at 784). The court will examine these three factors separately.

### CONDUCT OF CHRIS CAM

"In deciding whether to set aside a default judgment for 'excusable neglect,' a district court ought not to focus narrowly on the negligent act that caused the default and ask whether the act was itself in some sense excusable. Instead, the court should take account of 'all relevant circumstances surrounding the party's omission . . . .' " Union Pacific Railroad Company v. Progress Rail Services Corporation, 256 F.3d 781, 782 (8th Cir. 2001) (citing Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380, 395 (1993)). "The inquiry is essentially an equitable one, and the district court is required to engage in a careful balancing of multiple considerations, including 'the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant

8

acted in good faith . . . .' " Id. (citing Pioneer Investment Services Co., 507 U.S. at 395). The Eighth Circuit Court of Appeals "[has] consistently sought to distinguish between contumacious or intentional delay or disregard for deadlines and procedural rules, and a 'marginal failure' to meet pleading or other deadlines. We have rarely, if ever, excused the former." Johnson, 140 F.3d at 784. "But . . . have often granted Rule 55(c) and Rule 60(b) relief for marginal failures when there were meritorious defenses and an absence of prejudice." Id.

The court finds Chris Cam is neither a novice nor newcomer to the litigation process. It has appeared in the court system, both federal and state, on numerous occasions and is, or should be, familiar with the legal process of prosecuting or defending a claim. Ms. Christenson knew, or should have known, that plaintiff's complaint, styled and captioned in the Federal District Court for the District of South Dakota, was not just an extension of Mr. Harrowa's South Dakota Department of Labor administrative claim. Chris Cam employed attorneys in the past and knew full well that an attorney would be needed to represent Chris Cam in this federal litigation.

Ms. Christenson's informal response is styled in the general format of a formal answer to a complaint. (Docket 7-2). It put plaintiff on notice of the general nature of Chris Cam's reaction to the allegations of the complaint and included particularized claims of the absence of disability or disability discrimination. Id. Attorney MacNally encouraged Ms. Christenson to seek legal counsel. Plaintiff also provided notice of the filing

of plaintiff's motion for default judgment, as opposed to simply applying to the Clerk of Court for entry of default under Rule 55.

The reason Ms. Christenson chose to ignore Chris Cam's obligation to comply with both steps outlined in the summons and then chose to ignore Attorney MacNally's recommendation to secure counsel is not fully explained.  "Without attempting to fix blame, the . . . conduct of [Chris Cam's employee] . . . was careless, risking precisely the adverse result rendered by the [Clerk of Court].  But it was not contumacious, it did not exhibit an intentional flouting or disregard of the court and its procedures, and it only briefly delayed the litigation."  Johnson, 140 F.3d at 784-85.  While the court "do[es] not approve of this sort of cavalier approach to litigation, . . . [Chris Cam] was guilty of only a marginal failure for which relief from default should be granted *if* it has a meritorious defense and [plaintiff] will not suffer significant prejudice."  Id. (emphasis in original).

**EXISTENCE OF A MERITORIOUS DEFENSE**

"[T]he existence of a meritorious defense continues to be a relevant factor after Pioneer.  Such a showing underscore[s] the potential injustice of allowing the case to be disposed of by default, . . . thus triggering the incessant command of a court's conscience that justice be done in light of all the facts."  Johnson, 140 F.3d at 784 (internal citations and quotation marks omitted).  "Whether a meritorious defense exists is determined by examining whether the proffered evidence would permit a finding for the defaulting party."  Stephenson, 524 F.3d at 914 (citing Johnson, 140 F.3d at 785) (internal quotation marks and other citations omitted).  "The

underlying concern is . . . whether there is some possibility that the outcome . . . after a full trial will be contrary to the result achieved by the default." Id. (internal citation and quotation marks omitted).

Chris Cam's response (Docket 7-2) and defendant's brief (Docket 13) articulate defendant's potentially meritorious defense claim. "Mr. Harrowa was told he was terminated . . . due to the non-disclosure of health information on his DOT Employment Application. He was not told that the termination decision was related to any injury, . . . Since it was not the reason for termination." (Docket 7-2, ¶ 22). "Mr. Harrowa's actions and omissions regarding his qualifications deprived him of employment." Id. at ¶ 31. "There were no unlawful employment practices." Id. at ¶ 32. "No damages are due since no discriminatory practices were done." Id. at ¶ 34. As summarized in defendant's brief, its meritorious defense relates to the following issues: "whether the Plaintiff is a qualified individual with a disability, whether the Company actually discriminated against the Plaintiff because of his alleged disability and whether Defendant had a legitimate nondiscriminatory reason for terminating Plaintiff's employment." (Docket 14, p. 6). Chris Cam provided sufficient "factual support to illustrate the potential viability of [its] asserted defenses." Stephenson, 524 F.3d at 914. If defendant's filings are accurate, "the proffered evidence would permit a finding for the defaulting party." Id. (internal quotation marks omitted).

**PREJUDICE TO PLAINTIFF**

Plaintiff does not argue he has been prejudiced by defendant's conduct, except to suggest he has incurred expenses of $381.59 for filing

11

fees, court costs and service fees, and an undetermined amount expended for attorney's fees in responding to defendant's motions. (Docket 21, ¶ 21). "[D]elay alone, or the fact the defaulting party would be permitted to defend on the merits, are insufficient grounds to establish the requisite prejudice to the plaintiff. . . . Setting aside a default must prejudice plaintiff in a more concrete way, such as 'loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion.'" Stephenson, 524 F.3d at 914 (internal citation omitted).

## CONCLUSION

"Although Rule 55(c) issues are committed to the district court's discretion, when the grant of a default judgment precludes consideration of the merits of a case, even a slight abuse of discretion may justify reversal." Johnson, 140 F.3d at 785 (internal quotation marks omitted). The court finds "good cause exists" and the three Stephenson factors weigh in favor of granting defendant's motion to set aside default (Docket 12) and granting its motion to file its answer out of time (Docket 15). Stephenson, 524 F.3d at 912. The court further finds plaintiff is entitled to his expenses and attorney's fees as a condition for granting defendant's motions. Fed. R. Civ. P. 60(b).

## ORDER

Based on the above analysis, it is hereby

ORDERED that defendant's motions to set aside default (Docket 12) and to file an answer out of time (Docket 15) are granted.

IT IS FURTHER ORDERED that the entry of default (Docket 11) is vacated.

IT IS FURTHER ORDERED that defendant's answer to the complaint must be filed within fourteen (14) days of this order.

IT IS FURTHER ORDERED, pursuant to Fed. R. Civ. P. 60(b), that plaintiff is entitled to reasonable expenses, including attorney's fees, for responding to defendant's motions.  Plaintiff shall file an affidavit itemizing the reasonable expenses, time spent on these matters and the hourly rate requested for attorney's fees within fourteen (14) days of this order.

IT IS FURTHER ORDERED that if defendant objects to plaintiff's application for expenses and fees, defendant's objection shall be filed within seven (7) days of plaintiff's submission.

IT IS FURTHER ORDERED that defendant shall pay plaintiff's reasonable expenses, including attorney's fees, in the amount approved by the court within fourteen (14) days of entry of such order.

Dated January 11, 2012.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE